IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

**GREGORY D. SPENCE,**
**#R65880,**

        Plaintiff,

v.

**ROB JEFFREYS,**
**RICHARD MORGANTHALER,**
**K. HVARRE, and**
**H. MILLER,**

        Defendants.

Case No. 22-cv-00316-SPM

## MEMORANDUM AND ORDER

**MCGLYNN, District Judge:**

Plaintiff Gregory Spence, an inmate of the Illinois Department of Corrections ("IDOC"), filed the instant lawsuit pursuant to 42 U.S.C. § 1983 for alleged deprivations of his constitutional rights at Big Muddy Correctional Center. The Complaint is now before the Court for preliminary review pursuant to 28 U.S.C. § 1915A. Any portion of the Complaint that is legally frivolous, malicious, fails to state a claim for relief, or requests money damages from an immune defendant must be dismissed. 28 U.S.C. § 1915A(b).

### THE COMPLAINT

Plaintiff alleges the following: While incarcerated at Big Muddy Correctional Center ("Big Muddy"), Plaintiff had a job as a laundry porter on the 7 a.m. – 3 p.m. shift. (Doc. 1, p. 2). On January 15, 2022, Correctional Officer Miller refused to let Plaintiff out of his cell to attend his job assignment. Plaintiff wrote a grievance about the incident. (*Id.*).

On January 18, 2022, Plaintiff again was not let out of his cell for his job assignment. (Doc. 1, p. 2). Plaintiff asked Correctional Officer Stone why he was not allowed to go to work, and

Stone replied, "it is your day off!" Plaintiff told Stone that his days off are Sunday and Monday and that if he does not attend his shift then he will not receive goodtime credit. Stone told Plaintiff to write another grievance. (*Id.* at p. 3).

On January 23, 2022, Plaintiff heard Correctional Officer Miller tell a fellow inmate named Green who is a member of the Gangster Disciples gang, that Plaintiff had written a grievance on Miller. (Doc. 1, p. 3). Miller told Green she would show him the grievance later. Green started telling other inmates that Plaintiff was a snitch because he had written the grievance against Miller. (*Id.*). Plaintiff then filed an emergency grievance and sent request slips to Warden Morgenthaler. (Doc. 1, p. 3). He also wrote a letter to the state police and the director. Plaintiff later learned that Miller returned to the housing unit to again talk to inmate Green. Plaintiff sent another request slip to Warden Morgenthaler.

On January 25, 2022, Plaintiff was approached by a member of the Gangster Disciples, who told Plaintiff to be careful and watch Green because Green was telling other inmates that Plaintiff was a snitch. (Doc. 1, p. 4). That same day, Plaintiff again was not let out to go to work. The next day, Plaintiff asked Correctional Officer Brooks why he was not being let out to go work assignment. Brooks told Plaintiff that he was not listed to work. Plaintiff sent a request to Warden Morgenthaler. An inmate told Plaintiff that it was inmate Green who instructed Brooks not to let Plaintiff out of his cell for work. (*Id.*).

On January 27, 2022, Plaintiff was let out of his cell for his work assignment at 10:30 a.m. (Doc. 1, p. 4). Around 11:25 a.m., he called his fiancée and instructed her to call the office in Springfield to report Correctional Officer Miller and the treatment he had been receiving. Later that day, two lieutenants came to his cell and told him that at Warden Morgenthaler's orders, Plaintiff was to immediately be placed in segregation. (*Id.* at p. 5). Plaintiff asked why he was being taken to segregation and was told it was because of the phone call his fiancée had made to

Page 2 of 8

Springfield. Plaintiff was placed in a freezing cold cell without shoes and a blanket. He asked for a blanket but was told that there were not any. He was given his property but refused to sign the inventory form because certain property was missing. (*Id.*).

In the early morning of January 28, 2022, Plaintiff asked again for a blanket and was told to "deal with it." (Doc. 1, p. 5). He was served cold food and did not eat. Plaintiff was also served a ticket stating he was under investigation. Warden Hvarre walked through segregation, and Plaintiff told him what was happening with Miller and inmate Green and that his cell was cold, and he did not have a blanket. Hvarre told Plaintiff that she would try and find out what was going on with Plaintiff's situation. (*Id.*). Hvarre did not return to segregation that day.

On January 29, 2022, Plaintiff went on a hunger strike. (Doc. 1, p. 6). On January 31, Warden Hvarre walked through segregation again and told Plaintiff that the situation was being investigated. Hvarre also informed Plaintiff that there was no way that Miller would have been able to show inmate Green Plaintiff's grievance because Hvarre signed off on them for Warden Morgenthaler and that she had possession of the grievances. (*Id.*).

On February 1, 2022, an intel officer informed Plaintiff that he did not know of any ongoing investigation involving Plaintiff. (Doc. 1, p. 6). The intel officer took Plaintiff to an officer and recorded Plaintiff's statement regarding the conduct of Correctional Officer Miller. Plaintiff was released from segregation. (*Id.*). The next day, Plaintiff inquired about his job assignment and was told he had been terminated. (*Id.* at p. 7).

**PRELIMINARY DISMISSALS**

The Court dismisses all claims against Director Jeffreys. Plaintiff states that the director is legally responsible for the operations of the Illinois Department of Corrections and that he wrote to Jeffreys informing Jeffreys of the harassment he was receiving at Big Muddy. (Doc. 1, p. 2, 3). These allegations are not sufficient to state a claim against Director Jeffreys. Under Section 1983,

an individual must be personally involved in the constitutional deprivation. Jeffreys cannot be considered personally involved simply because Plaintiff wrote him a complaint letter. *See Burks v. Raemisch,* 555 F.3d 592, 595 (7th Cir. 2009). Further, Jeffries cannot be held liable solely because he was in a supervisory position, as there is no doctrine of *repondeat superior* under Section 1983.

## DISCUSSION

Based on the allegations in the Complaint and Plaintiff's articulation of his claims, the Court designates the following claims in this pro se action:

- **Count 1:** First Amendment retaliation claim against Miller and Morgenthaler.
- **Count 2:** Eighth Amendment claim against Morgenthaler for failing to protect Plaintiff from harassment by staff.
- **Count 3:** Eighth Amendment conditions of confinement claim against Hvarre.
- **Count 4:** Civil conspiracy claim against Defendants.
- **Count 5:** Fourteenth Amendment claim for the confiscation of Plaintiff's property.
- **Count 6:** Eighth Amendment cruel and unusual punishment claim against Miller.

The parties and the Court will use these designations in all future pleadings and orders, unless otherwise directed by a judicial officer of this Court. **Any other claim that is mentioned in the Complaint but not addressed in this Order should be considered dismissed without prejudice as inadequately pled under the *Twombly*[1] pleading standard.**

## Count 1

Count 1 will proceed against Correctional Officer Miller for giving information about Plaintiff to inmate Green in retaliation for Plaintiff filing a grievance against her resulting in a

---

[1] *See Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 570 (2007).

threat to his safety by other inmates.

Count 1 will also proceed against Warden Morgenthaler for placing Plaintiff in segregation in retaliation against Plaintiff for complaining to Springfield about staff harassment.

## Count 2

Count 2 is dismissed without prejudice. To state a failure to protect claim, Plaintiff must allege facts from which the Court could reasonably infer that he faced a substantial risk of serious harm, and that the defendants knew of and disregarded that risk. *Wilson v. Ryker,* 451 F. App'x 588, 589 (7th Cir. 2011).

As pled, Plaintiff has failed to state a claim for failure to protect. He claims that Morgenthaler received his request slips and grievances and failed to intervene to stop the harassment by staff. The only harassment by staff that potentially placed Plaintiff at a risk of harm was the communication with inmate Green by Miller that resulted in Green telling other inmates Plaintiff was a snitch. Nine days after Miller first spoke with Green on January 23 about Plaintiff's grievance, Plaintiff was transferred to a new housing unit. Thus, his complaints were not disregarded. Although Plaintiff is unhappy that Morgenthaler deemed some of his grievances as non-emergent, the mishandling of grievances does not state a constitutional claim. *See George v. Smith,* 507 F. 3d 605, 609 (7th Cir. 2007) ("[r]uling against a prisoner on an administrative complaint does not cause or contribute to the violation"). Count 2 is dismissed without prejudice.

## Count 3

Plaintiff's allegations that he spent five days in segregation in a cold cell without a blanket will proceed against Warden Hvarre. Plaintiff spoke to Hvarre twice about the temperatures of his cell and was still not provided a blanket or additional clothing. *See Gillis v. Litscher,* 468 F. 3d 488, 493 (7th Cir. 2006) ("[a] lack of heat, clothing, or sanitation can violate the Eighth Amendment"); *Wilson v. Seiter,* 501 U.S. 294, 304 (1991) (low cell temperature at night combined

with failure to issue blankets could amount to an Eighth Amendment violation).

### Count 4

Plaintiff has also failed to state a claim for civil conspiracy. Claims of conspiracy necessarily require a certain amount of factual underpinning to survive preliminary review. *See Woodruff v. Mason*, 542 F.3d 545, 551 (7th Cir. 2008) (quoting *Massey v. Johnson*, 457 F.3d 711, 716 (7th Cir. 2006)). In order to state a civil conspiracy claim, "the plaintiff must [plead facts sufficient to] show that (1) the individuals reached an agreement to deprive him of his constitutional rights, and (2) overt acts in furtherance actually deprived him of those rights." *Beaman v. Freesmeyer,* 776 F.3d 500, 510 (7th Cir. 2015).

Other than the conclusory statement that "[a]ll four defendants violated plaintiff's Constitutional rights," Plaintiff does not allege any facts to support the allegation that Jeffreys, Morgenthaler, Hvarre, and Miller agreed to a scheme to deprive him of his rights. Accordingly, Count 4 is dismissed.

### Count 5

Plaintiff's claim that certain items of his property were missing and not returned to him when he was released from segregation is dismissed with prejudice, as this claim is not asserted against a named defendant. Furthermore, the Seventh Circuit has specifically held that a prisoner within the Illinois Department of Corrections has an adequate post-deprivation remedy for confiscation of a prisoner's non-contraband property by personnel in the form of an action for damages in the Illinois Court of Claims. *See Murdock v. Washington*, 193 F.3d 510, 513 (7th Cir. 1999) (citing 705 ILCS 505/8); *Stewart v. McGinnis*, 5 F.3d 1031, 1035–36 (7th Cir. 1993).

### Count 6

Plaintiff claims that Miller harassed him by not letting him out of his cell to attened his work assignment on January 15, 2022 and by speaking to inmate Green about Plaintiff writing a

grievance against her. While unprofessional, the Court does not find Miller's conduct, as pled, rises to the level of extreme harassment that is required to violate the Eighth Amendment. *See Dobbey v. Illinois Department of Corrections,* 574 F. 3d 443, 446 (7th Cir. 2009) ("harassment, while regrettable, is not what comes to mind when one thinks of 'cruel and unusual' punishment"). Count 6 is dismissed without prejudice.

## DISPOSITION

For the reasons stated, the Complaint survives preliminary review pursuant to Section 1915A. **COUNT 1** shall proceed against Defendants Miller and Morgenthaler. **COUNT 3** will proceed against Hvarre. **COUNTS 2, 4, 5**, and **6** are **DISMISSED**. All claims against Jeffreys are **DISMISSED without prejudice.** The Clerk of Court is **DIRECTED** to terminate Jeffreys as a party to this case.

The Clerk of Court **SHALL** prepare for Morgenthaler, Hvarre, and Miller the following: (1) Form 5 (Notice of a Lawsuit and Request to Waive Service of a Summons), and (2) Form 6 (Waiver of Service of Summons). The Clerk is **DIRECTED** to mail these forms, a copy of the Complaint, and this Memorandum and Order to each defendants' place of employment. If a Defendant fails to sign and return the Waiver of Service of Summons (Form 6) to the Clerk within 30 days from the date the forms were sent, the Clerk shall take appropriate steps to effect formal service on the Defendant, and the Court will require the Defendant pay the full costs of formal service, to the extent authorized by the Federal Rules of Civil Procedure.

If a Defendant can no longer be found at the work address provided by Plaintiff, the employer shall furnish the Clerk with the defendant's current work address, or, if not known, his last known address. This information shall be used only for sending the forms as directed above or for formally effecting service. Any documentation of the address shall be retained only by the Clerk. Address information shall not be maintained in the court file or disclosed by the Clerk.

Defendants are **ORDERED** to timely file an appropriate responsive pleading to the Complaint and shall not waive filing a reply pursuant to 42 U.S.C. § 1997e(g). **Pursuant to Administrative Order No. 244, Defendants should respond to the issues stated in this Merit Review Order.**

Finally, Plaintiff is **ADVISED** that he is under a continuing obligation to keep the Clerk of Court and each opposing party informed of any change in his address; the Court will not independently investigate his whereabouts. This shall be done in writing and not later than 7 days after a transfer or other change in address occurs. Failure to comply with this order will cause a delay in the transmission of court documents and may result in dismissal of this action for want of prosecution. *See* FED. R. CIV. P. 41(b).

**IT IS SO ORDERED.**

**DATED:  May 31, 2023**

    *s/Stephen P. McGlynn*
**STEPHEN P. MCGLYNN**
**United States District Judge**

### NOTICE TO PLAINTIFF

The Court will take the necessary steps to notify the appropriate defendants of your lawsuit and serve them with a copy of your complaint. After service has been achieved, the defendants will enter their appearance and file an Answer to the complaint. It will likely take at least **60 days** from the date of this Order to receive the defendants' Answers, but it is entirely possible that it will take **90 days** or more. When all of the defendants have filed Answers, the Court will enter a Scheduling Order containing important information on deadlines, discovery, and procedures. Plaintiff is advised to wait until counsel has appeared for the defendants before filing any motions, to give the defendants notice and an opportunity to respond to those motions. Motions filed before defendants' counsel has filed an appearance will generally be denied as premature. Plaintiff need not submit any evidence to the Court at his time, unless otherwise directed by the Court.